IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

HoneyBaked Foods, Inc.,                       Case No. 3:08CV01686

       Plaintiff

v.                                                  ORDER

Affiliated FM Insurance Company,

       Defendant

Plaintiff filed a complaint seeking a declaratory judgment of its rights under its insurance policy with defendant and alleging breach of contract and bad faith denial of claims.

On review and consideration of the pleadings, motions, briefs and relevant law, and I find there is a determinative question of state law for which there is no clear precedent in the decisions of the Supreme Court of Ohio. Accordingly, for the reasons set forth below, this court certifies the question set forth in § II(B) of this order to the Supreme Court of Ohio under Rule XVIII of the Rules of Practice of that Court.

### I. Statement of Facts

This is an insurance coverage case. Following discovery of a pathogenic bacterium in several production runs of its ham and turkey products, plaintiff HoneyBaked Foods, Inc. (HoneyBaked), claimed a loss of about $8 million under its "all-risk" policy with defendant Affiliated FM Insurance

Co. (Affiliated FM). The claimed amount covered the losses from the inability to distribute tainted and potentially tainted food products and interruption of plaintiff's business.

Affiliated FM denied the claim, asserting that exclusions under the policy leave HoneyBaked without coverage for any part of the loss.

HoneyBaked is an Ohio corporation that sells and processes specially glazed ham and turkey products. As a federally inspected meat and poultry processor, HoneyBaked is responsible for processing and distributing wholesome, unadulterated and properly-labeled meat and poultry products to its customers. It is subject to routine inspection by the Food Safety and Inspection Service, an arm of the United States Department of Agriculture, which tests HoneyBaked's products on a regular basis for various safety hazards.

HoneyBaked purchased a comprehensive "all-risk" insurance policy from Affiliated FM. HoneyBaked had hired an insurance broker, Meadowbrook Insurance Group (Meadowbrook), to locate suitable policies for HoneyBaked's insurance needs. Meadowbrook identified Affiliated FM as a potential source for an all-risk insurance policy covering HoneyBaked's products and facility.

Before presenting HoneyBaked with a policy, Affiliated FM conducted a site visit and prepared a risk report identifying and discussing the hazards, exposures and risks at HoneyBaked's facility. This risk report noted that "[t]he most significant and common hazards exposing the food industry are centered on the susceptibility of food products to spoilage and contamination." HoneyBaked purchased the subject all-risk policy mindful of this assessment.

In early November, 2006, HoneyBaked discovered that a sample of its products had tested positive for *listeria monocytogenes*, a pathogenic bacterium that causes listeriosis, an uncommon

but potentially fatal disease. Further investigation revealed that a risk of contamination affected over one million pounds of product produced from September 5 through November 5, 2006.

HoneyBaked identified the source of contamination to be in one of the hollow rollers on its conveyor system. It removed this system and conducted extensive cleaning and sampling procedures. As a result of the contamination, HoneyBaked suspended operations twice, issued a recall of 46,941 pounds of its ham and turkey products, and eventually disposed of nearly one million pounds of product.

HoneyBaked submitted a claim of loss to Affiliated FM seeking reimbursement for the value of the discarded food product and additional losses resulting from business interruption.

Affiliated FM denied the claim, explaining that the policy excluded the product loss, and because "there is no covered physical loss or damage, any business interruption associated with the *listeria* contamination is also not covered."

Following denial of its claims under the policy, HoneyBaked sued Affiliated FM, seeking declaratory judgment of its rights under the policy and alleging that Affiliated FM had breached the contract and acted in bad faith in denying the claim. The parties filed cross-motions for summary judgment.

I found that the policy excludes the product loss caused by *listeria monocyogenes*. [ECF 54]. The policy contains a contamination exclusion, stating:

> This policy does not insure against loss or damages caused by [contamination, including but not limited to pollution]; however, if direct physical loss or damage insured by this policy results, then that resulting direct physical loss or damage is covered.

[ECF 34-15, at 25–27].

3

The Ohio Court of Appeals for the Eleventh District has explained that the "usual and ordinary meaning" of "contaminate" is "to render unfit for use by the introduction of unwholesome or undesirable elements." *Hartory v. State Auto. Mut. Ins. Co.*, 50 Ohio App. 3d 1, 3 (1988) (citation omitted); *see also Richland Valley Prods., Inc. v. St. Paul Fire & Cas. Co.*, 548 N.W.2d 127, 131 (Wis. App. Ct. 1996) (collecting cases uniformly defining the term "contamination"); *Landshire Fast Foods of Milwaukee, Inc. v. Emp'rs Mut. Cas. Co.*, 676 N.W.2d 528, 532 (Wis. App. Ct. 2003) (interpreting "contamination" to include the presence of *listeria monocytogenes* in food products).

HoneyBaked argues, however, that it reasonably believed that the all-risk policy would cover spoilation of its product during processing. As Affiliated FM itself observed in its risk assessment, the susceptibility of food products to spoilage and contamination is the most significant risk faced by the food industry.

A jury could find that HoneyBaked had a reasonable expectation of coverage for losses due to contamination. But the policy, when closely interpreted, excludes losses caused by contamination. The availability of coverage, notwithstanding the exclusion, turns on the question of whether Ohio law incorporates the reasonable-expectations doctrine and applies such doctrine to this case.

## II. Certification

### A. Merits of Certification

The Rules of Practice of the Supreme Court of Ohio provide it with discretion to answer questions of Ohio law certified to it by a federal court. R. of Prac. Sup. Ct. Ohio XVIII. Before certifying a question however, the federal court must determine that "there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent[.]" *Id.* at § 1.

As the Supreme Court of Ohio explained, "[c]ertification ensures that federal courts will properly apply state law." *Scott v. Bank One Trust Co., N.A.*, 62 Ohio St. 3d 39, 43 (1991) (*per curiam*). The Supreme Court of the United States has recognized that "certification of novel or unsettled questions of state law for authoritative answers by a State's highest court . . . may save time, energy, and resources and help build a cooperative judicial federalism." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (internal quotations and alterations omitted).

The Supreme Court of Ohio has twice addressed the reasonable-expectations doctrine. In *Anderson v. Highland House Co.*, 93 Ohio St. 3d 546 (2001), the Supreme Court of Ohio considered an insurance policy claim arising from death and injuries caused by residential carbon monoxide poisoning. Although ultimately finding the policy's exclusions to be ambiguous, the Court noted that "while we make no determination on the merits of the reasonable-expectations doctrine, this rationale could apply to the case at bar." *Id.* at 551.

In *Wallace v. Balint*, 94 Ohio St. 3d 182, 189 (2002), the plaintiff-appellants asked the Court to apply the reasonable-expectations doctrine. The Court observed that the Second Restatement of Contracts explains the doctrine, providing:

> Where the other party has reason to believe that the party manifesting such assent would not do so if he knew the writing contained a particular term, the term is not part of the agreement.

*Id.*; 2 Restatement of Law 2d, Contracts (1981) § 211(3).

The Court also quoted Professor Keeton's description of the doctrine's application to insurance policies: "The objectively reasonable expectations of applicants and beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the

5

policy provisions would have negated those expectations." *Id.* (quoting Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv. L. Rev. 961, 967 (1970)).

Although finding the arguments for applying the reasonable-expectations doctrine compelling, the Court observed nine years ago that "there is not yet a majority on this court willing to accept the reasonable-expectations doctrine." 94 Ohio St. 3d at 189.

Lower Ohio courts, looking to *Anderson*, have considered arguments based on the reasonable-expectations doctrine. *I.G.H. II, Inc. v. Selective Ins. Co. of South Carolina*, 2007 WL 1378379, *5 (Ohio App. Ct.) (finding insured had no reasonable expectation of coverage); *Buckeye Ranch, Inc. v. Northfield Ins. Co.*, 134 Ohio Misc. 2d 10, ¶¶ 38–43 (Ohio Com. Pl. 2005) (finding the Ohio Supreme Court's "pragmatic approach . . . to understanding what parties thought they would receive when buying insurance" similar to the reasonable-expectations doctrine).

Here, as noted, the policy excludes losses from contamination. The risk of such loss, a jury could find, motivated HoneyBaked's purchase of the Affiliated FM policy, and that Affiliated FM knew of HoneyBaked's desire and need for coverage against losses from contamination.

Whether coverage is available in this case depends on whether Ohio law encompasses the reasonable-expectations doctrine.

## B. Certified Question of State Law

This Court herewith certifies the following question of state law pursuant to Rule XVIII of the Rules of Practice of the Supreme Court of Ohio:

> In light of the Supreme Court of Ohio's opinion in *Anderson v. Highland House Co.*, 93 Ohio St. 3d 547 (2001), does the reasonable-expectations doctrine apply to a commercial general liability "all-risk" insurance policy, so that coverage, which otherwise would be excluded under the terms and conditions of the policy, is afforded, provided the trier of fact determines that the insured reasonably expected, when purchasing the policy, that the policy would cover the loss at issue.

**C. Information Required by Rule XVIII**

The court provides the following information in accordance with Rule XVIII, § 2(A)–(E):

1. Name of the case: *HoneyBaked Foods, Inc. v. Affiliated FM Insurance Co.*, 3:08CV01686.

2. Statement of Facts: Please refer to § I of this order for a full recitation of the pertinent facts.

3. Name of each of the parties:

    a. Plaintiff – HoneyBaked Foods, Inc.

    b. Defendant – Affiliated FM Insurance Co.

4. Names, Addresses, and Telephone Numbers of Counsel for Each Party:

    a. Plaintiff's Counsel:

    Alan G. Starkoff (#0003286)
    Schottenstein Zox & Dunn Co., LPA
    250 West Street
    Columbus, OH 43215-2538
    T: (614) 462-4938
    F: (614) 222-3499
    E: astarkoff@szd.com

    Amanda L. Wickline (#0076807)
    250 West Street
    Columbus, OH 43215-2538
    T: (614) 462-2204
    F: (614) 224-3678
    E: awickline@szd.com

    Jeremy M. Grayem (#0072402)
    250 West Street
    Columbus, OH 43215-2538
    T: (614) 462-2284
    F: (614) 222-3440
    E: jgrayem@szd.com

    b. Defendant's Counsel:

Richard D. Gable, Jr.
Gibbons
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
T: (215) 446-6210
F: (215) 446-6317
E: rgable@gibbonslaw.com

Sean P. Mahoney
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
T: (215) 446-6230
F: (215) 446-6332
E: smahoney@gibbonslaw.com

Thomas S. Brown
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
T: (215) 446-6215
F: (215) 446-6302
E: tbrown@gibbonslaw.com

Jennifer L. Seme
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
T: (215) 446-6287
F: (267) 675-6353
E: jseme@gibbonslaw.com

Michael G. Sanderson
Shumaker, Loop & Kendrick
1000 Jackson Street
Toledo, OH 43624
T: (419) 321-1261
F: (419) 241-6894
E: msanders@slk-law.com

Nathan A. Hall
1000 Jackson Street
Toledo, OH 43624

>T: (419) 321-1452
>F: (419) 241-6894
>E: nhall@slk-law.com
>
>Stephen A. Rothschild
>1000 Jackson Street
>Toledo, OH 43624
>T: (419) 321-1404
>F: (419) 241-6894

5. Designation of Moving Party: The court designates the plaintiff as the moving party.

## III.

For the above reasons, the court certifies the designated question of state law to the Supreme Court of Ohio.

It is also

ORDERED THAT:

1. In accordance with Rule XVIII, § 3 of the Rules of Practice of the Supreme Court of Ohio, Geri M. Smith, Clerk of the United States District Court for the Northern District of Ohio, shall serve copies of this Certification Order on counsel for the parties and to file this Certification Order under the seal of this Court with the Supreme Court of Ohio, along with appropriate proof of service.

2. Further consideration of the defendant's pending motion for summary judgment be, and the same hereby is stayed pending final action by the Supreme Court of Ohio in response to this Order of Certification; and

3. The parties shall forthwith notify this Court whether the Ohio Supreme Court accepts the certified question; and, if so, of that Court's final determination thereof.

So ordered.

                                                        <u>s/James G. Carr</u>
United States District Judge